(26 App. Div. 237.)

## SPAULDING et al. v. AMERICAN WOOD BOARD CO.

(Supreme Court, Appellate Division, First Department.    February 25, 1898.)

CONTRACT—CONSTRUCTION.

> In an action brought to foreclose a factor's lien on certain goods, it appeared that plaintiffs were agents for the sale on commission of goods manufactured by the defendant, and that prior to June 11, 1893, a difference of opinion existed as to whether certain transactions between the parties in relation to the goods in question constituted a sale by defendant to plaintiffs, or were ordinary consignments.    On that date, for the purpose of adjusting their differences, they entered into a written agreement providing that "all stock you [the plaintiffs] now have and consider consigned to be settled for by note, and we guaranty the price of $50 per ton."   *Held*, that by that settlement the plaintiffs became the owners of the goods, and that whatever recourse they might have against the defendant would be on the guaranty, after making sales of the goods.

Appeal from special term.

Action by John F. Spaulding and others against the American Wood Board Company.    From a judgment dismissing the complaint on the merits, plaintiffs appeal.    Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

I. L. Bamberger, for appellants.

Edmund Luis Mooney, for respondent.

PATTERSON, J.    This action to enforce a factor's lien was brought, apparently, under section 1737 of the Code of Civil Procedure and the authority of Whitman v. Horton, 46 Super. Ct. R. 531, affirmed 94 N. Y. 644.    No point has been made of the right to maintain such a suit before demand of payment of the amount of the lien, made upon the owner of the chattels against which the lien is sought to be enforced; and therefore we do not pass upon that question.    The plaintiffs were agents for the sale of goods manufactured by the defendant.    They had two accounts on their books of their dealings with the defendant,— one of goods consigned directly to them to be sold on commission, and another, called the "general account," which was of merchandise shipped and delivered by the defendant to customers secured by the plaintiffs, which merchandise did not pass through or come into the hands of the plaintiffs, but upon which they were entitled to receive a commission, evidently for procuring the sales to be made.    The complaint alleges that when this action was begun the plaintiffs had in their possession certain goods, upon which they claimed they had made advances to the defendant; that such goods were held under an express agreement that they should be retained as security for such advances and for commissions, and on a further agreement that such goods would bring in the market the price of $50 a ton, and further that the defendant guarantied such goods would bring that price; that the substance of that guaranty was subsequently, and on or about July 11, 1893, embodied in a writing; that it was also agreed that, in the event of the failure of the defendant to pay such advances and commissions, it was the right of the plaintiffs to sell the goods at public auction or private sale, and to retain from the proceeds of sale the amount due them.

Other facts are alleged, tending to sustain the right of the plaintiffs to foreclose the lien, and appropriate relief is asked for. The answer admits the possession by the plaintiffs of the goods in question, but avers that such goods were sold to the plaintiffs, and not consigned for sale, and sets up as an affirmative defense that prior to the commencement of this action an account was stated between the parties showing that the plaintiffs were indebted to the defendant in a certain sum of money, which has been fully paid, and that there has been a settlement and discharge of all claims and demands alleged in the complaint.

The real issue between the parties on these pleadings was the relation in which the plaintiffs stood to the merchandise upon which they claim a lien. Were the plaintiffs the purchasers of those goods, or did they hold them as factors for sale on account of the defendant? The solution of that issue of fact depends upon the construction to be given to the writing of July 11, 1893, which is referred to in the complaint as containing a guaranty given by the defendant, but which the defendant contends embraced the whole agreement between it and the plaintiffs with reference to the particular goods, the subject of the action. That writing is to be construed in the light of the circumstances surrounding its execution, and of the testimony given by one of the plaintiffs as to the reason and the occasion of the making of that paper. Mr. Spaulding testified that a dispute or misunderstanding had arisen as to whether the transactions referred to in that writing were sales made directly by the defendant to the plaintiffs, or whether the transactions were what were ordinarily understood to be consignments. The witness proceeded to state that the misunderstanding had arisen before the 11th of July, and that for the purpose of settling that misunderstanding, and bringing about a compromise of the differences then prevailing between the parties, he went to the factory of the defendant, and there, as the result of a conference, the paper was executed, which was signed by both the plaintiffs and the defendant. That paper recited that the "following agreement" was entered into, by which the differences between the parties were adjusted, viz.:

"All stock you [the plaintiffs] now have and consider consigned to be settled for by note, and we guaranty the price of fifty dollars per ton. Further, we [the defendants] agree to renew a portion—not more than $1,500—of the $2,500 note already given us on account of the June sales, including invoice of June 2nd, to be settled for on a cash basis; and we agree to accept customers' notes for a portion and check for balance in full to July 1st, 1893."

The interpretation of that paper was for the court. It was an agreement of settlement of the matter in contest between the parties. That matter the witness Spaulding has stated. It was whether the sales were made directly to the plaintiffs or were consignments. It is perfectly apparent that the true construction of the paper is that the goods which the plaintiffs considered consigned were to be settled for by note, and the defendant was to guaranty that the goods, when sold, would bring the plaintiffs the price of $50 a ton. We think the court below correctly construed the agreement. The contention on the part of the plaintiffs is that that writing is a mere recognition by the defendant of the plaintiffs' claim that the goods were consigned, and that the guaranty was intended to protect the plaintiffs for the amount of the ad-

vances they had made to the extent of $1,500 of the renewal of $2,500 given on account of the goods. But it is plain that this writing is evidence of a complete settlement for those goods. The note of the plaintiffs was to be given for the goods, and the guaranty of the price was for the protection of the plaintiffs, necessarily in some different relation than that of mere factors, for in the relation of factors the guaranty would accomplish nothing more than what the law provided, namely, a liability of the defendant for any balance that might arise by a sale of the goods for a less sum than the amount of the plaintiffs advances upon and charges against them. The guaranty was appropriate to a sale by the defendant to the plaintiffs, so that no loss would arise by reason of their becoming the owners of the goods; and the settlement and adjustment of the controversy upon the basis of the plaintiffs becoming such owners. The reference in the writing to the June invoice merely puts that on a cash basis, or, what is regarded as equivalent to that, the acceptance of customers' notes for a portion and a check for the balance. We think, therefore, that the court below was right in its conclusion that the plaintiffs became the owners, by the settlement of July 11th, of the goods, and that whatever recourse they might have against the defendant would be on the guaranty, after making the sale of the goods.

It is claimed, however, that the correspondence between the parties shows a modification of the writing referred to, and that the dealings between them with reference to the goods indicate such modification, or at least are evidence of the construction which the parties themselves gave to the arrangement resulting in that writing. That the correspondence cannot control in the former aspect seems clear from the fact that the plaintiffs sue upon a contract made on or before July 11th. The right to the lien is claimed to have arisen then, and not from any subsequent arrangement. As to a practical construction having been made by the parties of the instrument of July 11th, which would give it the meaning claimed by the plaintiffs, there is nothing in the plaintiffs' letter of August 1, 1894, and the defendant's answer to it of August 4, 1894, to justify that contention. Evidently, so far as the defendant is concerned, it only refused to sanction a sale which would render it liable upon its guaranty. The plaintiffs sought to reopen the question of consignment, and that the defendant would not assent to. It said in its letter, "It is unnecessary for us to restate our correspondence regarding the matter you insist upon disputing every time your note matures." Properly viewed, the plaintiffs' letter indicated a desire on the part of the plaintiffs to get the defendant committed to an acknowledgment that the goods were held on consignment, notwithstanding the settlement of July 11th, to accomplish that, to ask permission to sell the goods at less than the $50 mentioned in the guaranty. The defendant's refusal to permit that to be done does not affect the matter. The plaintiffs' right to sell was entirely independent of any permission of the defendant. They might have sold the goods for what they would bring in the market; and then have recovered the difference upon the guaranty.

The judgment of the court below was right, and should be affirmed, with costs. All concur.